## ASSURANCES GÉNÉRALES BANQUE NATIONALE, Appellant

v.

## Nadir DHALLA, Appellee.

### No. 05–08–00084–CV.

Court of Appeals of Texas, Dallas.

Feb. 26, 2009.

---

8. *Ante,* at 677.

Roy A. Spezia, Marine A. McCormick, Alifya Curtin, Clark, Thomas, and Winters, Austin, TX, for Appellant.

Richard D. Pullman, Collins & Basinger, PC, Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

In this interlocutory appeal, Assurances Générales Banque Nationale appeals the trial court's order denying its special appearance in a third-party action brought by Nadir Dhalla, alleging Assurances Générales was liable for all amounts sought by Progressive County Mutual Insurance Company against Dhalla, and Dhalla's property damages and attendant costs relating to an automobile accident. In two issues, Assurances Générales argues the trial court erred when it denied its special appearance because: (1) Texas does not have personal jurisdiction over it; and (2) Dhalla failed to sufficiently plead Texas has personal jurisdiction over it.

We conclude the trial court erred when it denied Assurances Générales's special appearance. The trial court's order denying Assurances Générales's special appearance is reversed and an order granting its special appearance and dismissing the action against it is rendered.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Progressive Insurance sued Dhalla, alleging Dhalla's negligence proximately caused an automobile collision between its insured and Dhalla, and its insured sustained bodily injury as a result of that collision. Progressive Insurance sought damages in the amount of $43,845.77.

Dhalla filed a third-party action against Assurances Générales alleging it was liable for the damages sought by Progressive Insurance and his damages. In his first amended cross-action, Dhalla alleged:

1. Assurances Générales Banque Nationale is before this Court and has answered.[1]

2. At the time of the subject accident, [Dhalla] was insured by Third–Party Defendant Assurances Générales Banque Nationale. His policy allowed him

---

1. The record shows Assurances Générales filed a special appearance objecting to jurisdiction and, subject thereto, an original answer.

to drive in the United States. Despite having the policy in full force and effect, [Assurances Générales] refused to honor their obligations, alleging false declarations and conditions in the insurance policy and with Article 2408 of Civil Code of Quebec pertaining to false declarations. The subject policy number was 7133338. Despite demands and inquiries, [Assurances Générales] has failed and refuses to explain why it is refusing this coverage.

3. Thus, said [Assurances Générales] is liable for all claims asserted against [Dhalla] in the above numbered and entitled cause, plus all other damages allowed by the Insurance Code of the State of Texas.

4. Additionally, despite promises from adjusters on behalf of [Assurances Générales], said [Assurances Générales] has failed to reimburse [Dhalla] for the damages he has suffered in the following amounts:

A. $25,476.34 for the automobile he was driving, which was destroyed and declared worhtless.

B. Lifetime warranty, $1,350.00.

C. Rental car costs in the amount of $899.99.

[Dhalla] further makes claims for said amounts.

Assurances Générales filed a special appearance claiming the trial court did not have personal jurisdiction because it is a Canadian corporation, it did not purposefully avail itself of the privilege of conducting activities in Texas, it could not reasonably anticipate being called into a Texas court, and the exercise of jurisdiction in Texas would offend traditional notions of fair play and substantial justice. Attached to Assurances Générales's special appearance was the affidavit of Pascale Hunt, a claims manager for Assurances Générales. She stated she has knowledge of Assurances Générales's legal affairs and regular business activities and, after reviewing the company's records, Assurances Générales: (1) is and, at all relevant times, was incorporated under the laws of Canada; (2) does not maintain a registered agent for service of process in Texas; (3) does not maintain a place of business in Texas; (4) does not employ anyone in Texas or regularly recruit Texas residents for employment, either directly or through an intermediary; (5) does not hold any Texas licenses and is not qualified to do business in Texas; (6) has no customers and does not sell its products in Texas; (7) does not own real or personal property in Texas; (8) does not have any post office boxes, bank accounts, telephone numbers, or other tangible assets in Texas; (9) does not have any subsidiaries doing business in Texas; (10) does not have a past or present obligation to pay taxes to the State of Texas; (11) has not advertised its products directly to the Texas market and has no regular channels of customer service in Texas; and (12) has never voluntarily submitted to the jurisdiction of a Texas court or administrative panel.

In his amended response to Assurances Générales's special appearance, Dhalla argued the trial court had jurisdiction over Assurances Générales because:

a) In the Dhalla case a Canadian Insurance Company purposefully availed itself of U.S. [sic] jurisdiction including the state [sic] of Texas by printing that the certificate of insurance is valid in Canada and the USA. In order to entice the consumer[,] the company purposefully declared that the insurance was valid in the USA without limiting language so as to avoid a particular jurisdiction.

b) The fact that a consumer purchased a policy and relied on that policy for coverage in the USA and in Texas was not

a fortuitous random coincidence but was exactly what the company intended by its language claiming the certificate was valid in the USA.

c) By marketing its insurance as valid in the USA[,] the company benefitted and profited by misleading consumers who otherwise would have purchased insurance that was valid in both Canada and the USA from another company. The company accepted premiums from consumers driving in the USA and therefore[,] availed itself of the Jurisdiction [sic]. If the Company did not want to avail itself of state courts it could have avoided particular jurisdictions by omitting ["]Valid in the USA["] or listing specific Jurisdictions [sic] which the insurance was not valid.

Attached to Dhalla's response was his affidavit, stating he is a Canadian citizen, resides in Texas, and is in the United States pursuant to a green card, and at the time of the automobile accident, he was a Canadian citizen. Also, attached to Dhalla's response was a copy of the motor vehicle liability insurance card issued by Assurances Générales. At the top of the insurance card, it states "Assurances Générales Banque Nationale" and lists two telephone numbers, one with a Canadian area code and the other a toll-free telephone number. Under the heading "Assureur—Insurer," it states "Innovassur Assurances Generales." The insurance card states it is a "certificat d'assurance automobile[,] motor vehicle insurance card[,] Canada Inter–Province." The policy number is listed as "7–133–3388." Also, printed in the section of the insurance card under the heading "Nom et Adresse de l'assuré—Name and Address of Insured" are Dhalla's name and a Canadian address. Additionally, listed on the insurance card are the effective date and the expiration date of the coverage: March 19, 2005 through September 19, 2006. The insured

vehicle is identified as a 2001 Hyundai, serial number "KMHWF25S21A450271." At the bottom of the insurance card, it states in both French and English "This certificate is valid within Canada and the U.S.A. This card should be carried in the insured vehicle for production as proof of insurance when demanded by police."

The trial court denied Assurances Générales's special appearance. No reporter's record was supplied to this Court respecting any hearing on the special appearance.

## II. ASSURANCES GENERALE'S SPECIAL APPEARANCE

In issues one and two, Assurances Générales argues the trial court erred when it denied its special appearance because Texas does not have general or specific jurisdiction over it and Dhalla failed to sufficiently plead Texas has personal jurisdiction over Assurances Générales.

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790–91 (Tex.2005); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002); *Am. Type Culture Collection v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002); *Capital Tec. Info. Servs., Inc. v. Arias & Arias Consultores,* 270 S.W.3d 741, 747 (Tex.App.-Dallas 2008, pet. filed) (en banc). Because the trial court's exercise of personal jurisdiction over a nonresident defendant is one of law, an appellate court reviews the trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007); *BMC Software,* 83 S.W.3d at 794; *Capital Tech.,* 270 S.W.3d at 748. However, the trial court must frequently resolve fact

questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794; *Capital Tech.*, 270 S.W.3d at 748. When a trial court does not issue findings of fact and conclusions of law in support of its order granting or denying a special appearance, all facts supported by the evidence that are necessary to support the order and supported by the evidence are implied. *See Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 795; *Am. Type*, 83 S.W.3d at 806; *Capital Tech.*, 270 S.W.3d at 748. When the appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software*, 83 S.W.3d at 795; *Capital Tech.*, 270 S.W.3d at 748.

### B. Burdens of Parties in Special Appearance

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *Am. Type*, 83 S.W.3d at 807; *Capital Tech.*, 270 S.W.3d at 748. This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas. *See Huynh v. Nguyen*, 180 S.W.3d 608, 619–20 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Perna v. Hogan*, 162 S.W.3d 648, 652–53 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (indicating pleading requirement can be satisfied by alleging nonresident defendant is doing business in Texas or nonresident defendant committed an act in Texas); *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 629 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.) (indicating pleading requirement can be satisfied by alleging nonresident defendant is doing business in Texas).

■ The nonresident defendant has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *Am. Type*, 83 S.W.3d at 807; *Capital Tech.*, 270 S.W.3d at 748. If the plaintiff does not allege jurisdictional facts showing the nonresident defendant has committed an act in Texas, the nonresident defendant can meet its burden of negating jurisdiction by presenting evidence that it is a nonresident. *See Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 634 (Tex.App.-Dallas 1993, writ denied) (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982)). If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court has personal jurisdiction over the nonresident defendant. *See Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 441 (Tex.App.-San Antonio 2005, no pet.); *Riviera Operating Corp. v. Dawson*, 29 S.W.3d 905, 908 (Tex.App.-Beaumont 2000, pet. denied); *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex.App.-Corpus Christi 1999, no pet.); *see also Capital Tech.*, 270 S.W.3d at 750–51 (nonresident defendant claimed he negated jurisdictional facts pleaded in plaintiff's petition and appellate court reviewed evidence plaintiff produced in response to nonresident defendant's special appearance); *cf. LeBlanc v. Kyle*, 28 S.W.3d 99, 101 n. 1 (Tex.App.-Texarkana 2000, pet. denied) (declining to follow *M.G.M. Grand Hotel's* language to effect that once defendant produces credible evidence negating jurisdiction, plaintiff bears burden of establishing Texas court has jurisdiction, as a matter of law).

### C. In Personam Jurisdiction

■ The nature of the evidence a party must adduce to meet its burden of proof is

defined by the Constitution, the Texas Legislature, statutes, and the case law. Texas courts may assert *in personam* jurisdiction over a nonresident defendant if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac,* 221 S.W.3d at 574; *Am. Type,* 83 S.W.3d at 806.

### 1. Texas Long–Arm Statute

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM.CODE §§ 17.041–17.045 (Vernon 1997); *PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 166 (Tex.2007); *BMC Software,* 83 S.W.3d at 795. The long-arm statute sets out a list of activities that constitute doing business in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042; *PHC–Minden,* 235 S.W.3d at 166; *BMC Software,* 83 S.W.3d at 795. However, this list is not exhaustive. *PHC–Minden,* 235 S.W.3d at 166; *BMC Software,* 83 S.W.3d at 795; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The broad language of section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC–Minden,* 235 S.W.3d at 166; *Moki Mac,* 221 S.W.3d at 575; *BMC Software,* 83 S.W.3d at 795; *Am. Type,* 83 S.W.3d at 807; *Guardian Royal,* 815 S.W.2d at 226; *Capital Tech.,* 270 S.W.3d at 748.

### 2. Due Process

In addition to the long-arm statute, the exercise of *in personam* jurisdiction over a nonresident defendant must satisfy federal due process requirements. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *PHC–Minden,* 235 S.W.3d at 166; *Moki Mac,* 221 S.W.3d at 575. Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over a nonresident defendant is constitutional when: (a) the nonresident defendant has established minimum contacts with the forum state; and (b) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *PHC–Minden,* 235 S.W.3d at 166; *Moki Mac,* 221 S.W.3d at 575; *BMC Software,* 83 S.W.3d at 795; *Am. Type,* 83 S.W.3d at 806; *Guardian Royal,* 815 S.W.2d at 226; *Capital Tech.,* 270 S.W.3d at 748.

### a. Minimum Contacts

The purpose of the minimum contacts analysis is to protect a nonresident defendant from being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Am. Type,* 83 S.W.3d at 806. The focus of the minimum contacts analysis is on the nonresident defendant's activities and expectations. *Michiana,* 168 S.W.3d at 790; *Am. Type,* 83 S.W.3d at 806. A nonresident defendant's contacts with a forum state can give rise to: (i) general jurisdiction; or (ii) specific jurisdiction. *See PHC–Minden,* 235 S.W.3d at 166; *Moki Mac,* 221 S.W.3d at 575–76; *Am. Type,* 83 S.W.3d at 806.

### i. General Jurisdiction

General jurisdiction refers to personal jurisdiction over a nonresident

defendant in a lawsuit where the cause of action does not arise out of or relate to the nonresident defendant's contacts with the forum state. *See Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. 1868; *PHC–Minden,* 235 S.W.3d at 168; *Capital Tech.,* 270 S.W.3d at 749. A general jurisdiction inquiry is more demanding than a specific jurisdiction inquiry because the minimum contacts must be substantial, and there is a substantially higher threshold. *PHC–Minden,* 235 S.W.3d at 168; *BMC Software,* 83 S.W.3d at 797. General jurisdiction is present when the nonresident defendant's contacts in a forum state are continuous and systematic. *Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868; *PHC–Minden,* 235 S.W.3d at 167–69; *BMC Software,* 83 S.W.3d at 796; *Capital Tech.,* 270 S.W.3d at 749. Usually, the nonresident defendant must be engaged in longstanding business in the forum state, such as marketing, shipping products, performing services, or maintaining one or more offices there. *PHC–Minden,* 235 S.W.3d at 168.

### ii. Specific Jurisdiction

▮▮▮▮▮ Specific jurisdiction refers to personal jurisdiction over a nonresident defendant in a lawsuit that arises out of or is related to the nonresident defendant's contacts with the forum state. *Moki Mac,* 221 S.W.3d at 576; *Capital Tech.,* 270 S.W.3d at 749. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendant, the forum state, and the litigation. *Moki Mac,* 221 S.W.3d at 575–76; *Guardian Royal,* 815 S.W.2d at 226; *Capital Tech.,* 270 S.W.3d at 749. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Moki Mac,* 221 S.W.3d at 579; *BMC Software,* 83 S.W.3d at 796; *Capital Tech.,* 270 S.W.3d at 749–50.

### (1) Purposeful Availment

▮▮▮▮▮ Purposeful availment is the touchstone of the jurisdictional due process analysis. *Asahi,* 480 U.S. at 109–10, 107 S.Ct. 1026; *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174; *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *Michiana,* 168 S.W.3d at 784; *Guardian Royal,* 815 S.W.2d at 226–27; *Capital Tech.,* 270 S.W.3d at 750. A nonresident defendant's activities must be purposefully directed toward the forum state so that the nonresident defendant could foresee being haled into court there. *See Burger King,* 471 U.S. at 474, 105 S.Ct. 2174; *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559; *Capital Tech.,* 270 S.W.3d at 750. There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174; *Moki Mac,* 221 S.W.3d at 575; *Michiana,* 168 S.W.3d at 784–85; *Guardian Royal,* 815 S.W.2d at 226; *Capital Tech.,* 270 S.W.3d at 750.

### (2) Alleged Liability Arises From or Relates To Contacts

▮▮▮▮▮ Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum.

*World–Wide Volkswagen,* 444 U.S. at 293–94, 100 S.Ct. 559; *Moki Mac,* 221 S.W.3d at 576; *BMC Software,* 83 S.W.3d at 796; *Guardian Royal,* 815 S.W.2d at 227. The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *Moki Mac,* 221 S.W.3d at 579. In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 585.

### b. Traditional Notions of Fair Play and Substantial Justice

■■■■■ In addition to minimum contacts, the exercise of personal jurisdiction over a nonresident defendant must comport with traditional notions of fair play and substantial justice. *See Asahi,* 480 U.S. at 113, 107 S.Ct. 1026; *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174; *BMC Software,* 83 S.W.3d at 795; *Capital Tech.,* 270 S.W.3d at 750. When a nonresident defendant has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Guardian,* 815 S.W.2d at 231.

### D. Application of the Law to the Facts

Dhalla's first amended cross-action against Assurances Générales did not plead Assurances Générales was doing business in Texas or facts that would bring Assurances Générales within the provisions of the Texas long-arm statute. *See, e.g., Moki Mac,* 221 S.W.3d at 574 (plaintiff bears initial burden of pleading sufficient allegations to bring nonresident defendant within provisions of long-arm statute). Assurances Générales filed a special appearance asserting it is a Canadian corporation and has not availed itself of the privilege of conducting business in Texas. *See Hotel Partners,* 847 S.W.2d at 634 (if plaintiff does not allege jurisdictional facts that defendant committed act in Texas, defendant can meet its burden to negate jurisdiction by presenting evidence it is nonresident). Assurances Générales met its initial burden and the burden returned to Dhalla to show, as a matter of law, the trial court has personal jurisdiction over Assurances Générales. *See, e.g., Oryx Capital,* 167 S.W.3d at 441. The only proof Dhalla offered as to jurisdiction in his response to the special appearance was: (1) his affidavit, stating he is a Canadian citizen and resides in the United States pursuant to a green card, and at the time of the automobile accident, he was a Canadian citizen; and (2) a copy of the motor vehicle liability insurance card issued by Assurances Générales that expressly stated it is "valid within Canada and the U.S.A."

■■■■ First, as to general jurisdiction, Assurances Générales argues the trial court does not have general jurisdiction over it because Dhalla failed to sufficiently plead it has continuous and systematic contacts with Texas. Assurances Générales claims it is a Canadian corporation, it does not maintain a registered agent in Texas, it does not have a place of business in Texas, it does not employ anyone in Texas, it does not regularly recruit Texas residents for employment, and it does not own property in Texas. Dhalla responds that Assurances Générales has not negated the jurisdictional facts he pleaded, and "did not in its affidavit deny that its insureds drive in Texas under its certificates of insurance or that [Assurances Générales] has worked claims in Texas on behalf of its

insureds that carried its certificate of insurance."

The proof offered in Dhalla's response to the special appearance does not demonstrate Assurances Générales has "continuous and systematic" contacts with Texas, giving rise to general jurisdiction. The evidence produced by Dhalla does not show Assurances Générales engaged in long-standing business in Texas, such as marketing, performing services, or maintaining one or more offices in Texas. *See PHC–Minden,* 235 S.W.3d at 168. The insurance policy issued by Assurances Générales to Dhalla is not in the record. Also, there were no allegations or evidence showing when or where the policy was purchased or issued, the volume of business Assurances Générales engaged in with regard to automobile insurance policies effective in Canada and the United States, the reasons Dhalla's policy was effective in the United States, whether Assurances Générales sent statements to collect the premiums to Dhalla in Texas, or even whether the insured vehicle, the 2001 Hyundai, was the vehicle involved in the automobile collision.[2] Further, Dhalla's assertion in his brief that Assurances Générales "did not in its affidavit deny that its insureds drive in Texas under its certificates of insurance or that [Assurances Générales] has worked claims in Texas on behalf of its insureds that carried its certificate of insurance" is not supported by any facts alleged by Dhalla. There were no allegations asserted or facts offered on these points by Dhalla in his response to Assurances Générales's special appearance. Assurances Générales has no burden to address propositions regarding general jurisdiction that were not raised by Dhalla in the trial court.

Second, as to specific jurisdiction, Assurances Générales argues the trial court does not have specific jurisdiction over it because Dhalla failed to sufficiently plead it purposefully directed its activities toward Texas and it was foreseeable that a coverage action between Assurances Générales and a Canadian citizen would be brought in Texas. Dhalla's affidavit fails to mention Assurances Générales's alleged activities in Texas and states only that: (1) he obtained an insurance card and purchased insurance from Assurances Générales; and (2) he relied on the insurance coverage in the United States. Assurances Générales contends these assertions by Dhalla do not establish Assurances Générales had minimum contacts with Texas and his general allegations are conclusory, at best. Dhalla responds that Assurances Générales "does not deny" it uses adjusters in Texas, has provided a defense for insureds in Texas, or that its policy does not exclude Texas. Also, Dhalla claims he pleaded his Texas address, visa status, and attached a copy of the insurance card, which he asserts are *prima facie* proof that Assurances Générales "intended to avail itself and its insureds of the USA and the State of Texas." Further, Dhalla argues it was foreseeable that Assurances Générales would be sued in any jurisdiction of the United States because its insurance card instructed holders to provide the insurance card to police, when demanded, as proof of insurance. The parties do not address whether Assurances Générales's alleged liability arises from or relates to its alleged contacts with Texas.

For a substantial connection to exist between Assurances Générales and Texas, it must come about by an action of Assur-

---

**2.** Also, we note that Progressive Insurance's original petition, which is included in the record on appeal, does not indicate whether the 2001 Hyundai was the vehicle involved in the automobile accident.

ances Générales purposefully directed toward Texas. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026; *Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174. Dhalla's unilateral activity of being present in Texas at the time of the automobile accident is insufficient. *See World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 559; *Moki Mac,* 221 S.W.3d at 575; *Guardian Royal,* 815 S.W.2d at 227–28. The proof offered in Dhalla's response to the special appearance does not demonstrate Assurances Générales engaged in activities that were purposefully directed toward Texas, so that it could foresee being haled into a Texas court, which would give rise to specific jurisdiction.

Also, Texas cannot exercise specific jurisdiction over Assurances Générales solely based on contacts that are random, isolated, or fortuitous. *See Moki Mac,* 221 S.W.3d at 575; *Michiana,* 168 S.W.3d at 785. The facts alleged by Dhalla must indicate Assurances Générales intended to serve the Texas market. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026; *Moki Mac,* 221 S.W.3d at 577. While the insurance card shows it is "valid within Canada and the U.S.A.," it clearly shows an address for Dhalla in Canada, not the Texas address he provided in his affidavit. Further, the insurance card does not provide the terms of the insurance policy. Accordingly, the evidence offered by Dhalla does not demonstrate Assurances Générales reached out beyond Canada to create continuing relationships and obligations with Texas to subject Assurances Générales to the jurisdiction of Texas in suits based on its activities. *See Burger King,* 471 U.S. at 473, 105 S.Ct. 2174; *Moki Mac,* 221 S.W.3d at 575; *Michiana,* 168 S.W.3d at 785.

In addition, Dhalla had the burden to show Assurances Générales sought some benefit, advantage, or profit by availing itself of Texas's jurisdiction. *See Moki*

*Mac,* 221 S.W.3d at 575; *Michiana,* 168 S.W.3d at 785. Dhalla's evidence and allegations offer no proof in that regard. *See Asahi,* 480 U.S. at 110, 107 S.Ct. 1026; *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174; *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559; *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154; *Moki Mac,* 221 S.W.3d at 575; *Michiana,* 168 S.W.3d at 784–85; *BMC Software,* 83 S.W.3d at 795. Further, nothing shows Assurances Générales invoked the benefit and protections of Texas law, consenting to suit in Texas. *See World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559; *Michiana,* 168 S.W.3d at 784–85.

Further, the determination of whether Assurances Générales's alleged liability "aris[es] out of or [is] related to" Assurances Générales's purposeful acts is vital in showing the required substantial connection between Assurances Générales's contact with Texas and the operative facts of his third-party action against it. *See Moki Mac,* 221 S.W.3d at 585. Dhalla's proof does not address the pivotal point of whether Assurances Générales's alleged liability "aris[es] out of or [is] related to" Assurances Générales's purposeful acts within Texas. *See id.*

Finally, Dhalla's assertion in his brief that Assurances Générales "does not deny" it uses adjusters in Texas, has provided a defense for insureds in Texas, or that its policy does not exclude Texas is not supported by any facts alleged by Dhalla. Assurances Générales has no burden to address propositions regarding specific jurisdiction that were not raised by Dhalla in the trial court.

We conclude, on this record, the evidence is legally insufficient to support the trial court's implied findings in support of general and specific jurisdiction. Issues one and two are decided against Dhalla. We need not consider the parties' argu-

ments regarding whether the exercise of jurisdiction over Assurances Générales in Texas comports with traditional notions of fair play and substantial justice.

## III. CONCLUSION

The trial court erred when it denied Assurances Générales's special appearance.

The trial court's order denying Assurances Générales's special appearance is reversed. An order granting Assurances Générales's special appearance and dismissing the action against it is rendered.