02-11-173-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00173-CV

 

 


 
 
 rEBECCA GEORGE
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Adam M. Deardorff and Lana Wirsig
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 348th
District Court OF Tarrant COUNTY

----------

OPINION

----------

Appellant
Rebecca George appeals from the trial court’s dismissal of her claims against
Appellees Adam M. Deardorff and Lana Wirsig on jurisdictional grounds.  In one
issue, George argues that the trial court erred by sustaining Deardorff’s and
Wirsig’s special appearances.  Because we hold that the trial court did not err
by sustaining the special appearances, we affirm the trial court’s order
dismissing George’s claims against them.

Background

George
filed suit against Deardorff, Wirsig, and Harlan Hall, a party not involved in
this appeal.  Hall is a resident of Texas, Deardorff is a resident of
Pennsylvania, and Wirsig is a resident of Missouri.  In her petition, George
asserted claims for, among other things, libel, slander, defamation, civil
conspiracy, intentional infliction of emotional distress, interference with
known business relations, and negligence.

George
asserted the following facts in her petition.  In order to assist his daughter
Dana in achieving the “High Point in the Nation” award from the American Paint
Horse Association (APHA), Hall began a campaign to sabotage Maggie Griffin, one
of his daughter’s major competitors, and to discredit George, who trained
Griffin and her horse.  As part of this campaign, Hall filed suit against
George; Griffin; Griffin’s mother; Wirsig; and Wirsig’s mother in Michigan
state court for battery, assault, negligence, intentional infliction of
emotional distress, and civil conspiracy.  Wirsig was at that time one of
George’s clients.

Early
in the Michigan lawsuit, Wirsig provided Hall with a written statement
asserting that George and Griffin had instructed her to “cover” Dana at a
competition (that is, to position her horse between Dana’s horse and the judges
to obstruct the judges’ view of Dana).  Hall dismissed Wirsig and her mother
from the lawsuit, and Wirsig ceased all communication with George.

Hall
produced Deardorff for a deposition in the Michigan suit, and in Deardorff’s
deposition, he stated that at the same competition, George behaved in a manner
designed to harass and intimidate Dana and other competitors.  During this
time, Deardorff and Hall were engaged in negotiations for Hall to hire
Deardorff as the Hall family’s horse trainer in Texas.

The
trial court in the Michigan suit granted George and the Griffins’ motion for
summary judgment on Hall’s claims.  In addition to filing his lawsuit, Hall
lodged two complaints with the APHA, causing that organization to revoke George’s
status as an official APHA judge and to suspend her from APHA competitions for
six months.  This suspension caused her to lose more than half of her clients.

Deardorff
and Wirsig both filed special appearances asserting that the trial court lacked
personal jurisdiction over them.  In response, George alleged that they both
had made false statements that were provided to APHA, whose headquarters is in
Fort Worth.  After a hearing, the trial court sustained the special appearances
and dismissed George’s claims against Deardorff and Wirsig.

Standard
of Review

Whether
a trial court has personal jurisdiction over a defendant is a question of law
that we review de novo.[1]  The trial court
frequently must resolve questions of fact before deciding the jurisdiction
question, however, and we may review a trial court’s findings of fact for legal
and factual sufficiency.[2]  Although we do not
review the trial court’s legal conclusions for factual sufficiency, we may
review the trial court’s conclusions drawn from the facts to determine their
correctness.[3]  If we
determine that a conclusion of law is erroneous but that the trial court
rendered the proper judgment, the erroneous conclusion of law does not require
reversal.[4]

When
a trial court does not issue findings of fact and conclusions of law with its
special appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied.[5]  But when the appellate
record includes the reporter’s and clerk’s records, these implied findings are
not conclusive and may be challenged for legal and factual sufficiency.[6]

Special
Appearances

Texas
courts may exercise personal jurisdiction over nonresident defendants in
accordance with the Texas long-arm statute.[7] 
The plaintiff has the initial burden to plead sufficient allegations to confer
jurisdiction,[8]
and, thus with a nonresident defendant, the plaintiff has the burden of
pleading sufficient allegations to bring the defendant within the reach of the
Texas long-arm statute.[9]

A
plaintiff may meet this minimal pleading requirement by alleging that the
nonresident defendant is doing business in Texas.[10]  Once the plaintiff has met
this burden, the nonresident defendant has the burden of negating all bases of
jurisdiction alleged in the plaintiff’s petition.[11]  Because the plaintiff
defines the scope and nature of the lawsuit, the defendant’s burden to negate
jurisdiction is tied to the allegations in the plaintiff’s pleading.[12] 
Thus, if the plaintiff fails to plead facts bringing the defendant within reach
of the long-arm statute, the defendant need only prove that he or she does not
live in Texas to meet this burden.[13]

The
long-arm statute extends Texas courts’ personal jurisdiction “as far as the
federal constitutional requirements of due process will permit.”[14]
 Personal jurisdiction meets constitutional due process requirements when two
conditions are met: “(1) the defendant has established minimum contacts with
the forum state, and (2) the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice.”[15]

A nonresident
defendant’s contacts with a state can give rise to either general or specific
jurisdiction.[16]  General jurisdiction exists
when a defendant’s contacts are continuous and systematic, in which case the forum
state may exercise personal jurisdiction over the defendant even if the cause
of action did not arise from or relate to activities conducted within the forum
state.[17]  Specific jurisdiction is
established if the defendant’s alleged liability arises from or is related to
an activity conducted within the forum.[18]

To have
minimum contacts for purposes of specific jurisdiction, a nonresident defendant
must by some act have purposefully availed itself of the privileges of
conducting activities within Texas.[19]  Only the defendant’s
contacts with the state count: a defendant should not be haled into a jurisdiction
solely as a result of the “unilateral activity of another party or a third
person.”[20]  The acts relied on to
show minimum contacts must be purposeful rather “random, isolated, or
fortuitous.”[21]  Furthermore, the
defendant must seek some benefit, advantage, or profit by availing itself of
the jurisdiction.[22]

One
way a nonresident defendant establishes minimum contacts is by doing business
in the state.[23]  For purposes of Texas’s
long-arm statute, a nonresident does business in Texas if the nonresident commits
a tort “in whole or in part” in the state.[24]  An allegation that the
nonresident committed a tort in Texas, however, while satisfying the long-arm
statute, does not necessarily satisfy due process requirements.[25]

Analysis

In
her sole issue, George argues that the trial court erred by sustaining
Deardorff’s and Wirsig’s special appearances because the undisputed facts and
legal precedence clearly show that Texas courts have jurisdiction over
Deardorff and Wirsig.  George did not plead any facts in her petition to show
general jurisdiction and did not make any assertion in her response to
Deardorff’s and Wirsig’s special appearances that the trial court had general
jurisdiction over Deardorff and Wirsig.  In fact, she specifically stated that
she was “not alleging general jurisdiction applies here.”  Accordingly, we
focus our analysis on whether the facts showed that the trial court had
specific jurisdiction.

We
first examine George’s petition to see if she alleged facts giving rise to
jurisdiction.  George alleged that Deardorff was a resident of Pennsylvania and
that Wirsig was a resident of Missouri.  She did not allege in her petition
that Wirsig or Deardorff had done business in Texas, nor did she allege any
other jurisdictional facts.  Although she asserted that Wirsig’s and
Deardorff’s statements were provided to APHA, she asserted that Hall submitted
them, not Wirsig or Deardorff.[26]  She also asserted that
Deardorff had engaged in negotiations with Hall regarding the possibility of
Hall hiring Deardorff to become the Hall family’s horse trainer in Texas.  But
she did not allege where these negotiations occurred or allege any other facts
about these negotiations.  None of these alleged facts show that either
Deardorff or Wirsig had any actual contact with Texas.  Based on these
pleadings, George did not meet her burden to allege facts sufficient to give
the trial court personal jurisdiction over Deardorff and Wirsig.

Because
George failed to plead jurisdictional facts, Deardorff and Wirsig could meet
their burden to negate jurisdiction by proving that they were nonresidents.[27] 
Deardorff and Wirsig both submitted affidavits to the trial court in which they
swore that they were not residents of Texas.  George never disputed that they
were not Texas residents, and in fact she acknowledged that they were
nonresidents in her pleadings.  Because Deardorff and Wirsig met their burden
to negate jurisdiction, George had the burden to show that the trial court had
jurisdiction of Deardorff and Wirsig.[28]

George
filed a response to the special appearances in which, in contradiction to her
pleadings, she alleged that Wirsig and Deardorff furnished defamatory
statements to the APHA, which has its headquarters in Texas, thereby committing
a tort in this state.  But then, in her affidavit attached to the response, she
again alleged that it was Hall who had given the statements to the APHA.  George
did not amend her pleadings, and thus at the time the trial court entered its
order, her live pleadings alleged that it was Hall who provided Deardorff’s and
Wirsig’s statement to the APHA, and she affirmed this assertion in her
affidavit challenging the special appearances.

To
this response, Wirsig and Deardorff filed a joint reply.  Wirsig attached an
affidavit in which she stated that she had signed an affidavit in accordance
with her settlement with Hall of the Michigan lawsuit.  She stated that at the
time she signed the affidavit, she was not aware of any APHA complaints
relating to the Michigan lawsuit, that she did not give the affidavit to the
APHA, and that if it was given to the APHA, it was done without her knowledge. 
Deardorff likewise signed an affidavit in which he stated that he signed an
affidavit in connection with the Michigan lawsuit, that he was unaware of the
APHA complaints relating to the Michigan lawsuit, that he did not give his
affidavit to the APHA, and that if the affidavit had been given to that
organization, it was done without his knowledge.

George
failed to assert any grounds on which the trial court could determine it had
personal jurisdiction over Deardorff and Wirsig.  Furthermore, even if the
trial court considered her one statement in her response that Appellees had
furnished their statements to the APHA, this allegation is not sufficient to
show jurisdiction.  This act, if true, was too random or isolated to constitute
purposeful availment and does not show that Deardorff or Wirsig sought some
benefit, advantage, or profit by availing themselves of Texas.[29] 
Similarly, George’s allegation that Deardorff engaged in employment negotiations
with Hall do not show minimum contacts; she did not allege whether these talks
occurred in Texas or were of a nature to show purposeful availment.

George
argues that the fact that it was Hall who provided the statement to APHA has no
relevance here because “that issue is applicable under the purposeful availment
analysis, not the long-arm analysis.”  We do not understand this argument.  The
“purposeful availment” analysis applies in determining whether a defendant has the
minimum contacts with a forum to bring the defendant within the reach of the
long-arm statute.  Thus, the purposeful availment analysis applies to the
long-arm determination.

George
then argues that because she asserted a claim for civil conspiracy, Hall’s acts
are imputed to Deardorff and Wirsig.  But George had to establish personal
jurisdiction over Deardorff and Wirsig individually and not based on the acts
of another person as part of a conspiracy.[30]  We overrule this
argument.

George
also argues that Deardorff and Wirsig attended APHA events and Wirsig competed
in APHA-sponsored events, and because APHA is headquartered in Texas, these
acts constitute doing business in Texas.  But George did not allege that
Deardorff and Wirsig attended any of these events in Texas, much less that
their contacts with Texas in connection with these events were more than just
random or isolated contacts or that in attending the events they had sought
some benefit, advantage, or profit by availing themselves of the laws of this
state.[31]  We overrule this
argument.

George
further argues that Wirsig was a customer of George, and George’s business is
located in Texas.  But George never alleged that Wirsig ever did business with
George in Texas or otherwise alleged facts showing that by using George’s
services, Wirsig purposefully invoked the benefits or protections of Texas
laws.[32]  We overrule this
argument.

George
contends that under the laws of defamation, publication of a defamatory
statement is actionable, even if the publishing is done by someone other than
the party making the defamatory statement, if “a reasonable person would
recognize that an act creates an unreasonable risk that the defamatory matter
will be communicated to a third party.”  George is correct that in some cases, a
party will be liable for the republication by a third party of defamatory
statement made by the party.[33]  But whether Deardorff
and Wirsig could ultimately be liable in a suit for defamation is not
determinative of whether the trial court had jurisdiction over them.[34]
 Instead, George must have alleged facts showing that Deardorff and Wirsig had
minimum contacts with Texas.  We overrule this argument.

Finally,
George argues that provision of Deardorff and Wirsig’s statements to APHA
directly affected George and her business.  But that their conduct in another
state may have had some affect on George in this state is not enough to give
Texas courts jurisdiction over them.[35]  We overrule this
argument, and we hold that the trial court correctly determined that George
failed to meet her burden to establish that the trial court had personal
jurisdiction over Deardorff and Wirsig.

Because
we have upheld the trial court’s determination based on the minimum contacts
analysis, we need not consider George’s argument that the exercise of personal
jurisdiction comports with notions of fair play and substantial justice.[36] 
We overrule George’s sole issue.

Having
overruled George’s sole issue, we affirm the trial court’s order sustaining Deardorff’s
and Wirsig’s special appearances and dismissing George’s claims against them. 

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and MEIER, JJ.

 

DELIVERED:  February 2, 2012









[1]BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).





[2]Id.





[3]Id.





[4]Id.





[5]Id. at 795.





[6]Id.; Moncrief Oil Int’l, Inc. v. OAO Gazprom, 332
S.W.3d 1, 7 (Tex. App.—Fort Worth 2010, pet. filed).





[7]Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2008); BMC
Software, 83 S.W.3d at 795.





[8]Retamco
Operating, Inc. v. Republic Drilling Co., 278 S.W.3d 333, 337 (Tex. 2009); Moncrief,
332 S.W.3d at 7.





[9]BMC Software, 83 S.W.3d at 793.





[10]Moncrief,
332 S.W.3d at 7.





[11]Id.





[12]Kelly v. Gen. Interior Constr.,
Inc., 301 S.W.3d 653, 658 (Tex. 2010).





[13]Id.
at 658–59.





[14]BMC Software, 83 S.W.3d at 795.





[15]Id. (citing Int’l Shoe Co. v.
Washington, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).





[16]Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 575–76 (Tex. 2007).





[17]CSR Ltd. v. Link, 925 S.W.2d 591, 595
(Tex. 1996).





[18]Id.; Moncrief, 332 S.W.3d at 9.





[19]See Moki Mac, 221 S.W.3d at 576; see
also Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 784–85 (Tex. 2005).





[20]Michiana, 168 S.W.3d at 785.





[21]Id.





[22]Id.





[23]IRA Res., Inc. v. Griego, 221 S.W.3d
592, 596 (Tex. 2007).





[24]Tex. Civ. Prac. & Rem. Code Ann. § 17.042.





[25]Michiana,
168 S.W.3d at 788.





[26]See
id. at 785 (stating that a defendant should not be haled into a
jurisdiction based solely on the unilateral activity of a third party).





[27]See Kelly, 301 S.W.3d at 658–59.





[28]See
Assurances Generales Banque Nationale v. Dhalla, 282 S.W.3d 688, 695 (Tex.
App.—Dallas 2009, no pet.)





[29]See
Michiana, 168 S.W.3d at 788
(stating that allegations that a tort was committed in Texas satisfy the
long-arm statute but not necessarily the U.S. Constitution).





[30]See Nat’l Indus. Sand Ass’n v. Gibson,
897 S.W.2d 769, 773 (Tex. 1995) (affirming that it is the contacts of the
defendant himself that are determinative on the question of jurisdiction and
declining to recognize the assertion of personal jurisdiction over a
nonresident defendant based solely upon the effects or consequences of an
alleged conspiracy with a resident in the forum state); Moncrief, 332
S.W.3d at 10 n.7.





[31]See
Michiana, 168 S.W.3d at 785.





[32]See
id. (“Jurisdiction is premised on notions of implied consent—that by
invoking the benefits and protections of a forum’s laws, a nonresident consents
to suit there.”).





[33]See
Wheeler v. Methodist Hosp., 95 S.W.3d 628, 639–40 (Tex. App.—Houston [1st
Dist.] 2002, no pet.).





[34]See
Michiana, 168 S.W.3d at 790–91 (rejecting a jurisdiction analysis that
equates the jurisdictional inquiry with the underlying merits); see also
Kelly, 301 S.W.3d at 660 (“Although the trier-of-fact may ultimately
conclude that Kelly and Hofstatter violated the Texas Trust Fund Act and
committed fraud, the mere commission of an act does not grant Texas courts
jurisdiction over the actor.”).





[35]See
Kelly, 301 S.W.3d at 660–61 (stating that “jurisdictional analysis always
centers on the defendant’s actions and choices to enter the forum state
and conduct business” and holding that the court of appeals erred by allowing
the plaintiff’s claims to proceed despite the lack of allegations and evidence
that any part of the claim originated from the defendants’ conduct in Texas).





[36]See
Tex. R. App. P. 47.1.