AFFIRMED; Opinion Filed December 3, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00398-CV

## KAYE/BASSMAN INTERNATIONAL CORP., Appellant
## V.
## PANKAJ DHANUKA AND KISHORE SARAOGI, Appellees

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-03698-07**

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Evans

In this interlocutory appeal, Kaye/Bassman International Corp. challenges the trial court's

order granting the special appearance of nonresidents Pankaj Dhanuka and Kishore Saraogi and

dismissing the claims against them. In a single issue, appellant contends appellees are subject to

specific jurisdiction in Texas because the claims against them directly relate to and arise from

appellees' purposeful contacts with Texas. Based on the record before us, we affirm the trial

court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a Texas-based recruiting and staffing firm for the call-center industry and

other businesses. Appellant also refers potential business to its call center clients in exchange for

a commission based on the revenue generated by the referral. At the heart of this matter is a

dispute over appellant's entitlement to certain commissions pursuant to an agreement it executed with one of its call-center clients, Help Desk Now, Inc. (HDN).

In 2004, appellant contracted with HDN, a North Carolina corporation with its principal place of business in New Jersey. Pursuant to the agreement, HDN paid appellant a commission on all revenue generated by HDN's client, Synchronoss Technologies, Inc., a Delaware corporation with a principal place of business in New Jersey. The agreement provided for performance in Texas and application of Texas law. Several addendums were later added to the contract.

Appellees Pankaj Dhanuka and Kishore Saraogi are residents of Kolkata (Calcutta), India. They are employed by Xplore-Tech Services Private Ltd., an Indian entity. In December 2006 or January 2007, the principals of HDN's parent company held a meeting in Canada with appellees to discuss Xplore-Tech's potential acquisition of HDN. According to HDN employee and Texas resident Mike O'Neil, it was Dhanuka who first suggested to him at the meeting in Canada that a 2005 addendum to appellant's agreement with HDN eliminated appellant's entitlement to Synchronoss commissions.[1]

Xplore-Tech ultimately acquired HDN on April 12, 2007, and appellees became directors of HDN. In May 2007, HDN filed a declaratory judgment action against appellant seeking a declaration of HDN's rights regarding its contractual obligations to pay appellant commissions on Synchronoss business. Appellant filed a counterclaim for breach of contract. The parties then filed competing motions for summary judgment and the trial court granted summary judgment in favor of HDN and against appellant. Appellant appealed and we reversed the

---

[1] In his deposition, Dhanuka denied discussing appellant's contract with HDN with O'Neil before April 2007. Saraogi testified that he did not recollect whether he discussed the contract prior to the acquisition.

judgment and remanded the case to the trial court for further proceedings. *See Kaye/Bassman Intern. Corp. v. Help Desk Now, Inc.*, 321 S.W.3d 806 (Tex. App.—Dallas 2012, pet. denied).

On remand, appellant added appellees as individual defendants in the case, asserting causes of action against them for breach of fiduciary duty, tortious interference, fraudulent transfer, civil conspiracy, and money had and received/unjust enrichment.[2] Appellant also alleged that HDN's corporate veil should be pierced because appellees used HDN as a sham to perpetrate a fraud on appellant and requested a constructive trust/lien be imposed on appellees. Appellees filed a special appearance in which they asserted, among other things, they were residents of India, never lived in Texas, never owned property in Texas, never individually engaged in business in Texas, and never traveled to Texas to conduct personal business of any kind. They also argued that even if appellant's allegations were true, any alleged actions by appellees were taken in their capacities as officers or directors of non-Texas entities rather than individuals and any decisions regarding compliance with the commission agreement took place in India and were made as good faith business decisions.[3]

Appellant filed a response to the special appearance contending that appellees: (1) tortiously interfered with a contract governed by Texas law and performable in Texas; (2) acted through and conspired with their agent, Texas resident Michael O'Neil; (3) regularly made phone calls and sent emails to Texas in furtherance of their plan to avoid paying appellant; and (4) instructed O'Neil and others to misrepresent to appellant their intentions to pay appellant. Appellant also alleged that Dhanuka traveled to Texas in 2007 and 2011 in furtherance of appellees' plan and to instigate litigation. Finally, appellant stated that appellees fraudulently

---

[2] During the pendency of this action, HDN's business with Synchronoss was transferred to Fusion BPO Services, Inc., a Delaware corporation headquartered in New Jersey. Appellant also named Fusion as a defendant.

[3] Appellees also contended that "[t]here is no connection, much less the substantial connection required between the alleged acts of Individual Defendants and Texas" and "[t]he Individual Defendants have no contacts with Texas bearing a nexus with the alleged wrongdoing that forms the basis of [appellant's] counterclaim."

transferred assets belonging to HDN, which had previously invoked Texas's jurisdiction. Appellant filed a sixth amended petition incorporating the jurisdictional allegations specified in its response. After a hearing at which no live testimony was taken, the trial court granted appellees' special appearance. This appeal ensued.

## ANALYSIS

### A. Standard of Review

We review de novo the trial court's determination of a special appearance. TEX. R. CIV. P. 120a; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (2007). Where, as here, the trial court did not issue findings of fact and conclusions of law with its ruling, we imply all facts that are supported by the evidence to uphold the trial court's determination. *Moki Mac*, 221 S.W.3d at 574.

### B. Special Appearance Procedure

In a special appearance, the defendant bears the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the defendant negates the bases alleged, plaintiff must show, as a matter of law, that the court has personal jurisdiction over the nonresident defendant. *Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120 (Tex. App.—Dallas 2010, no pet.); *Assurances Générales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695–96 (Tex. App.—Dallas 2009, no pet.).

Jurisdiction may be negated on either factual or legal grounds. *Kelly*, 301 S.W.3d at 659. Among other things, the defendant may challenge whether the plaintiff has alleged sufficient minimum contacts between him and Texas to establish personal jurisdiction based on the capacity in which he was sued. *See Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex. App.—Austin 2005, no pet.); *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex. App.—San Antonio 2004, no pet.) (nonresidents filed special appearance asserting plaintiff's allegations insufficient to establish

–4–

jurisdiction over them individually because all contacts made in corporate capacity). One challenge to capacity is the fiduciary shield doctrine, that is "whether or not the corporate agent can be held personally liable under applicable law . . . ." *Stull v. LaPlant*, 411S.W.3d 129, 137 (Tex. App.—Dallas 2013, no pet.).

### C. Specific Jurisdiction

A nonresident's forum-state contacts may give rise to either general jurisdiction or specific jurisdiction. *Moki Mac*, 221 S.W.3d at 575. In its brief, however, appellant limits its arguments to the issue of specific jurisdiction. Appellant contends Texas may exercise specific jurisdiction over appellees because they tortiously interfered with a Texas contract and injured a Texas entity.

We analyze specific jurisdiction on a claim-by-claim basis, unless we are shown that all claims arise from the same contacts with Texas. *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 11-0195, 2013 WL 4608672, at *4 (Tex. Aug. 30, 2013). Appellant has provided no argument or analysis concerning whether all its claims arise from the same forum contacts or different ones. Appellant's pleadings do not clearly show that all the claims arise out of the same jurisdictional facts. Appellant limits its appellate arguments to its tortious interference claim and related conspiracy claim. Because appellant has failed to challenge on appeal the trial court's special appearance ruling with respect to its claims for breach of fiduciary duty, fraudulent transfer, conspiracy relating to these claims, and money had and received/unjust enrichment, these claims are not before us and we express no opinion about them.[4] *See* TEX. R. APP. P. 38.1(h); *see also Gazprom*, 2013 WL 4608672, at *4. We therefore focus our inquiry on whether the trial court

---

[4] Although appellant's live pleading contains an allegation involving piercing the corporate veil of HDN, neither appellant's response to the special appearance nor its appellate brief contain an argument with respect to this allegation relating to the exercise of personal jurisdiction over appellees.

properly declined to exercise specific jurisdiction over appellees regarding appellant's claims for tortious interference and conspiracy to commit tortious interference.

Specific jurisdiction exists when the nonresident defendant's alleged liability arises out of or is related to his activity conducted within the forum. *Moki Mac*, 221 S.W.3d at 576. The contacts with the forum which we are to analyze for jurisdictional purposes are those "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Gazprom*, 213 WL 4608672, at \*5 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985)). A substantial connection can result from even a single act. *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). But "there must be a substantial connection between those contacts and the operative facts of the litigation." *Id*. at \*8 (quoting *Moki Mac*, 221 S.W.3d at 585). The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction. *See id*. at \*8–9 (citing *Moki Mac*, 221 S.W.3d at 585).

In *Gazprom*, the Texas Supreme Court applied the above principles and declined to exercise specific jurisdiction over a foreign company on the tortious interference claims against it. *Id*. at \*9. As relevant here, the court reasoned that when the alleged tortious communications occurred at a meeting in California, even though individuals from Texas participated in the meeting and the alleged result of the meeting was the decision to breach a contract performable in Texas, those operative facts were not substantially connected to Texas for the jurisdictional analysis. *Id.*

### D. Appellees' Texas Contacts

Appellant pleaded the following jurisdictional allegations with respect to appellees:

[T]he Court has personal jurisdiction over Dhanuka and Saraogi because they tortiously interfered with a contract governed by and performable in Texas; acted through and conspired with their agent, a Texas resident (Counter-Defendant O'Neil); Dhanuka and Saraogi regularly made phone calls and sent emails to

–6–

Texas in furtherance of their plan to avoid paying Kaye/Bassman; and Dhanuka and Saraogi instructed O'Neil and others to misrepresent to Kaye/Bassman their intentions to pay Kaye/Bassman. In addition, Dhanuka travelled to Texas in 2007 (and again in 2011) in furtherance of the plan to injure [appellant] and instigate litigation in Texas. After this lawsuit was filed, [appellees] coordinated the fraudulent transfer of assets belonging to [HDN], which had previously invoked this Court's jurisdiction. [Appellees'] tortious conduct was directed at and caused injury to a Texas entity. [5]

Appellees supported their special appearance with affidavits in which they denied that any of their contacts with Texas were in their personal capacities. They did not, however, specifically deny having made email and telephonic communications with O'Neil in Texas nor did they deny Dhanuka's visits to Texas. In response, appellant presented O'Neil's 2008 deposition testimony admitting to speaking daily with appellees. But O'Neil did not detail the subject matter of any of those communications or indicate when they occurred. [6] The only communication with appellees that O'Neil testified to occurring before Xplore-Tech's acquisition of HDN occurred in either December 2006 or January 2007 at a meeting in Canada. O'Neil testified that Dhanuka told him at that time that the contract with appellant, as modified, required no further commission payments on Synchronoss revenue and he knew HDN would stop the payments once it was acquired. [7] Appellant also presented appellees' deposition testimony evidencing their equivocations about whether they had telephone or email communications with O'Neil in 2006 or 2007.

---

[5] We note that, "[a] conspiracy claim alone is not enough to establish personal jurisdiction." *MasterGuard L.P. v. Eco Techs. Intern. LLC*, 05-12-01318-CV, 2013 WL 4482976 (Tex. App.—Dallas Aug. 22, 2013, no. pet. h.) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)). Here, appellant's conspiracy claim depends upon its tortious interference claim which is the subject of our analysis.

[6] O'Neil did not testify that appellees made phone calls or sent emails to him in Texas before Xplore-Tech acquired HDN.

[7] Appellant wisely refrains from arguing any jurisdictional significance results from the meeting in Canada. A meeting outside of Texas arranging an alleged tortious interference with a contract performable in Texas does not constitute contacts with Texas on which there can be a substantial connection to operative facts that would be used at a trial to prove appellees are liable for tortious interference. *See Gazprom*, 2013 WL 4608672, at *9.

On appeal, the parties dispute whether appellees negated appellant's allegations that they emailed and telephoned O'Neil in Texas regarding HDN's stopping payment of further commissions to appellant.[8] Nevertheless, appellant specifically pleaded that appellees became the controlling officers and/or directors of HDN after the acquisition. It also pleaded appellees' new, indirect ownership of HDN precipitated the alleged breach of the commission contract in an effort to make HDN more profitable. Moreover, both sides agree HDN was acquired by Xplore-Tech on April 12, 2007 and shortly thereafter appellees became directors of HDN.

Appellees argue that the tortious interference claims against them cannot arise from or relate to any communications they had with O'Neil after they became HDN directors. Appellees base this argument on Texas law that an agent or officer of a business entity cannot be liable for tortiously interfering with the business entity's contract unless a plaintiff proves that the agent or officer acted in a manner so contrary to the entity's best interests that his or her actions could only have been motivated by personal interest when interfering with the business entity's contract. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997); *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456–57 (Tex. 1998) (requiring proof that the interference was motivated solely by the agent's personal interest and the interference harmed the business entity). Absent pleading and proof that an officer's conduct was solely for the officer's benefit and contrary to the interest of the business entity, an officer's "acts on the corporation's behalf are deemed corporate acts." *ACS*, 943 S.W.2d at 432. Because appellant did not make such allegations or present such proof, appellees contend any alleged jurisdictional contacts in furtherance of tortious interference after the April 2007 acquisition are subject to the fiduciary

---

[8] In its response to the special appearance, appellant also asserted the fraudulent transfer of HDN's Synchronoss business to Fusion also gave rise to personal jurisdiction over appellees. Appellant does not make this argument on appeal. In any event, as alleged by appellants, the transfer of Synchronoss business (a Delaware corporation with its principal place of business in New Jersey) from one non-Texas entity to another non-Texas entity did not involve any actions in, or contacts with, Texas. Accordingly, it is an insufficient ground on which to base jurisdiction. *See Niehaus v. Cedar Bridge, Inc.*, 208 S.W.3d 575, 582 (Tex. App.—Austin 2006, no pet.).

shield doctrine and do not constitute contacts with Texas in their personal capacities. *See Stull*, 411 S.W.3d at 137–38.

Appellant's theory of liability actually avoids the fiduciary shield argument asserted by appellees, as appellant's counsel confirmed in oral argument, because appellant's theory is that appellees' tortious interference occurred before HDN was acquired on April 12, 2007, that is before appellees became officers of HDN. However, appellant did not plead the specific time period during which it alleges appellees "regularly made phone calls and sent emails to Texas in furtherance of their plan to avoid paying Kaye/Bassman" and that "Dhanuka travelled to Texas in 2007 . . . in furtherance of the plan to injure [appellant] and instigate litigation in Texas." Without pleading the specific time such conduct occurred, the alleged contacts with Texas could have occurred after the April 12, 2007 acquisition when appellees became officers of HDN. Once appellees became officers, their contacts with Texas would not constitute contacts involving a substantial connection to the operative facts of the litigation because such contacts would not be facts used at trial to prove appellees' individual liability for tortious interference. *See Gazprom* at *8–9 (citing *Moki Mac*, 221 S.W.3d at 585). Accordingly, appellees' evidence that none of their contacts with Texas were in their individual capacities along with the argument that they could not be liable in their individual capacities for their conduct on behalf of out of state entities, negated appellant's jurisdictional allegations. This shifted the burden to appellant to bring forward evidence that appellees' alleged phone calls, emails, and visits to Texas occurred before the corporate acquisition in April 2007. *Alliance Royalties*, 329 S.W.3d at 120; *Dhalla*, 282 S.W.3d at 695–96. Because on this record appellant did not prove appellees were involved in any phone calls, emails, or visits to Texas before the corporate acquisition in April 2007 nor that the content of such (non-existent) communications

pertained to HDN breaching its agreement with appellant, we resolve appellant's sole issue against it.

## CONCLUSION

Based on the record before us, we conclude the trial court did not err in determining appellees lacked sufficient contacts with Texas in their individual capacities to support the exercise of personal jurisdiction over them.  We affirm the trial court's order.


/David Evans/
DAVID EVANS
JUSTICE


130398F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KAYE/BASSMAN INTERNATIONAL
CORP., Appellant

No. 05-13-00398-CV      V.

PANKAJ DHANUKA AND KISHORE
SARAOGI, Appellees

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-03698-07
Opinion delivered by Justice Evans,
Justices O'Neill and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the trial court's order is
**AFFIRMED**.

It is **ORDERED** that appellees Pankaj Dhanuka and Kishore Saraogi recover their costs
of this appeal from appellant Kaye/Bassman International Corp.

Judgment entered this 3rd day of December, 2013.

/David Evans/
DAVID EVANS
JUSTICE