**Affirmed and Opinion Filed April 28, 2020**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-18-01105-CV**

_____

**KATHY BRADY, Appellant**
**V.**
**ANITA KANE, Appellee**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-18-00890-B**

## MEMORANDUM OPINION

Before Justices Bridges, Molberg, and Partida-Kipness
Opinion by Justice Partida-Kipness

Appellant Kathy Brady appeals the trial court's judgment granting appellee Anita Kane's special appearance and dismissing Brady's claims against Kane for want of personal jurisdiction. In six issues, Brady argues the special appearance should have been denied, the judgment should be reversed, and Brady should be awarded her attorney's fees. For the reasons that follow, we affirm the trial court's judgment.

# BACKGROUND

Kane is Brady's adult step-daughter. Brady lives in Dallas, Texas. Kane resides in Virginia, has resided in Virginia since April 1995 and, according to her affidavit testimony, has never resided in Texas. In the underlying lawsuit, Brady claims she provided Kane two loans in 2016 totaling $6,518.33 and Kane failed to repay those loans. The first transaction occurred in July 2016 and is evidenced by a wire transfer of $6.035.00 from a Dallas County bank account. According to Brady, Kane made the loan request by contacting Brady while Brady was physically located in Dallas County, Texas. Brady asserted below that loan repayments were to be made in Dallas County and the loan was to be repaid in six months.

Kane, in contrast, maintained below that the money was a gift from Brady that Kane did not ask for, and that Brady began calling the money a loan after she became angry with Kane over other personal matters. Kane explained in her affidavit testimony below that she did not solicit the $6,000 from Brady and did not ask Brady to loan her $6,000 or any amount of money in the last five years. According to Kane, Brady reached out to Kane while Kane was in Virginia and offered to help Kane's family because "that's what mothers do for their children." Kane testified that before the money was transferred, Brady did not say that she considered the money a loan and there were no discussions about Kane repaying Brady or any repayment terms. Kane stated in her affidavit that Brady began calling the $6,000 a loan months after she gave the money to Kane when she became angry with Kane over personal

matters. At that point, Brady demanded Kane sign an IOU and left voicemails threatening to sue Kane in Dallas to get a judgment and garnish her wages when Kane did not appear in court. Kane believes Brady purposefully filed suit in Texas because she knew Kane would be unable to come to Texas and defend herself.

The second purported loan was for $483.33 to cover Kane's hotel bill in December 2016 when she was visiting Dallas on business. Brady and Kane tell different stories regarding this transaction as well. According to Brady, in December 2016 Kane was visiting Dallas and staying at a hotel in Grapevine. Kane was surprised to find out her room was not being paid for by the third party sponsoring the event at the hotel. While having dinner at the hotel, Kane requested that the room be paid for by Brady with one of Brady's credit cards. According to Brady, the hotel bill was paid using her credit card as a loan to Kane.

Brady, however, was not present during the dinner at the Gaylord Texan, and she did not dispute below that Kane's father met Kane for dinner alone that evening. Kane testified that her father offered to pay for dinner and to pay for Kane's hotel room. Kane initially declined the offer, but her father insisted. Kane maintained that there was never a discussion with her father that she could not afford to pay for the room or dinner, and Brady was at no point a party to the discussion or the event. According to Kane, "At no point was this ever a 'loan' or a 'credit' or anything other than a father offering to do a nice thing for his daughter."

# PROCEDURAL HISTORY

Kane did not repay the money as allegedly promised and negotiated, so Brady sued Kane in justice court in Dallas County on January 13, 2017. In her justice court petition, Brady alleged only that Kane was indebted to Brady because Kane "borrowed cash" from Brady in the amount of $6,483.33. Kane filed a special appearance, which the justice court denied. After a bench trial, the justice court rendered judgment for Brady. After the justice court denied Kane's motion for new trial, Kane filed her Statement of Inability to Afford Payment of Court Costs or an Appeal Bond in the justice court. Brady filed a contest to Kane's Statement, which the justice court sustained. Kane appealed that ruling to the county court pursuant to rule 506.1(d)(3). TEX. R. CIV. P. 506.1(d)(3). That appeal was assigned to County Court at Law No. 1 and docketed as cause number CC-17-04125-E. After that court granted Kane's statement of inability to pay costs and denied Brady's motion to strike Kane's statement, Kane's appeal of the justice court judgment was assigned to County Court at Law No. 2 and docketed as cause number CC-18-00890-B.[1]

In the county court, Brady filed a verified, amended petition in which she asserted that Kane primarily resides in Virginia with homes in Hilton Head and Colorado and is an individual who "borrowed money situated in Dallas County,

---

[1] Kane also sought relief from the justice court's judgment by filing a petition for writ of certiorari, which was docketed in County Court at Law Number 5 of Dallas County, Texas under cause number CC-17-04125-E. *See Kane v. Brady*, No. 05-17-01206-CV, 2018 WL 3301596, at *2 (Tex. App.—Dallas July 5, 2018, no pet.). That proceeding was concluded and has no bearing on the issues presented in this appeal.

Texas from Kathy Brady on at least three separate occasions by contacting Kathy while Kathy was in Dallas County, Texas." Brady also asserted that Kane had the following additional jurisdictional contacts with Texas:

- "Upon information and belief, Kane primarily lived in Dallas County, Texas beginning the summer of 1981 and remained in Dallas between her ages of 12 and 20," and "has had a Texas driver's license."

- Kane "may even have joined the Marines at a Dallas recruitment center."

- Kane attended Thomas Jefferson High School in Dallas, admitted working in Texas, and has admitted to being in and out of Texas "on numerous occasions since the above – visiting friends, family, at the time she borrowed money from Plaintiff on the third such occasion, and for work related activities."

- Before Brady filed the JP action, Brady entered into settlement/repayment negotiations with Kane where Brady was always in Texas when the discussion took place, whether by phone, text, e-mail, or other means of communication. According to Brady's amended petition, some of those communications were initiated by Kane and others by Brady.

- Kane had solicited a $12,000 loan from Brady in 2012 while Brady was in Dallas County, Texas, the funds came from a Texas bank, were to be repaid in Texas, and Kane made the final loan repayment in person by hand delivery in Dallas County, Texas to Brady.

Brady sought the $6,518.33 allegedly owed from the 2016 transactions, attorney's fees of $15,000, court costs, and interest.

Kane filed a supplemental special appearance, which attached and incorporated by reference her verified special appearance filed in the justice court and several other exhibits, including two affidavits from Kane previously-filed in the

–5–

justice court. Kane denied Brady's jurisdictional allegations. Through her own affidavit testimony and documentary evidence, Kane presented evidence that she was presently a resident of Virginia, had resided in Virginia since 1995, had resided in only four states during the course of her life, New York, California, South Carolina, and Virginia, had never resided in Dallas, and never had a Texas driver's license or state ID card from Texas. Kane graduated from Southampton High School in New York. The only time she spent more than five consecutive days in Texas was in 1983 when she spent a week in the summer after graduating high school with her father in Texas before she left for the Marine Corps. During that week, Kane helped her father with working at a café. Other than that, however, she has never been employed in Texas or conducted business in Texas. Kane also stated that she did not meet Brady until Christmas 1992, so any testimony offered by Brady about Kane before 1992 would not be based on Brady's personal knowledge. Kane does not currently and has not ever owned property or assets in Texas. Since moving to Virginia in 1995, Kane has been in the state of Texas less than five times.

Brady filed a response in opposition to the special appearance. Brady did not, however, present evidence to dispute Kane's jurisdictional contentions. Instead, Brady argued that the special appearance should be denied because Kane had either waived the special appearance or had purposefully availed herself of the laws and jurisdiction of the Texas courts and established minimum contacts with Texas by

entering into the two loan transactions such that the court should exercise specific jurisdiction over her.

The county court at law held a hearing on the special appearance on May 18, 2018 and, on May 21, 2018, signed an order granting Kane's special appearance. Brady requested findings of fact and conclusions of law and filed a motion for new trial. The county court judge denied the motion for new trial by written order on July 30, 2018 but did not issue findings of fact or conclusions of law. This appeal followed. In six issues, Brady argues the special appearance should have been denied and she should be awarded attorney's fees and costs. Before addressing the merits of the special appearance itself, we will address Brady's contention that the special appearance suffered from several procedural defects that required it to be denied.

## DEFECTIVE PLEADINGS

In her first issue, Brady argues that Kane's special appearance was fatally defective because Kane filed the motion after Brady filed an amended petition in the county court at law, Kane did not timely pursue the special appearance, and the supplemental special appearance was not sworn. We disagree with each of these arguments.

### A. Brady's Amended Petition

Brady initially asserts that Kane was barred from filing a special appearance because Brady amended her justice court petition when she filed a petition in the

county court that Brady believes cured any jurisdictional defects of her justice court petition. That is incorrect. A party may appeal a judgment from a justice of the peace court to a county court at law. TEX. CIV. PRAC. & REM. CODE § 51.001(a); TEX. R. CIV. P. 506.1(a). "An appeal is perfected when a bond, cash deposit, or statement of inability to pay is filed in accordance with this rule." TEX. R. CIV. P. 506.1(h). "[I]t is well-settled that perfection of an appeal to county court from a justice court for trial de novo vacates and annuls the judgment of the justice court." *Villalon v. Bank One*, 176 S.W.3d 66, 69–70 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). It is undisputed that Kane perfected her appeal to the county court. Accordingly, the judgment of the justice court was vacated and annulled, and the case started over once Kane perfected her appeal. *See* TEX. R. CIV. P. 506.3 ("The case must be tried de novo in the county court. A trial de novo is a new trial in which the entire case is presented as if there had been no previous trial.").

Once the appeal was perfected, the justice court record, including the original papers in the case, was transmitted to, filed in, and became a part of the county court's appeal record for the trial de novo. *See* TEX. R. CIV. P. 506.2. Rather than rely on her rudimentary, form justice court petition, Brady chose to file an amended petition in the county court. This was her choice and permitted under Texas law. *See, e.g., Allen v. Goodwill Indus. of Houston, Inc.*, No. 14-17-00738-CV, 2018 WL 5056493, at *3 (Tex. App.—Houston [14th Dist.] Oct. 18, 2018, no pet.) (mem. op.) (original justice court petition amended in appeal to county court); *see also*

*Hufstutler v. Gulf, C. & S.F. Ry. Co.*, 216 S.W. 495, 496 (Tex. Civ. App.—Austin 1919, no writ) ("A plaintiff has the right to amend his petition so as to cure a defect of jurisdiction."). In response, Kane filed a supplemental special appearance. Brady's contention that her amended petition somehow cured any deficiencies in her justice court petition and barred Kane's special appearance as a matter of law is incorrect. On the contrary, that amended petition served simply as the pleading from which the jurisdictional burden-shifting process began in the county court at law. *See, e.g., Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) (setting out Texas burden-shifting scheme in challenges to personal jurisdiction and noting that "[o]nce the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff."); *see also Allen*, 2018 WL 5056493 at *3 ("[A]n amended petition supersedes and completely replaces all previous pleadings, rendering the previous pleadings ineffective") (quoting *Wren v. Tex. Emp't Comm'n*, 915 S.W.2d 506, 508 (Tex. App.—Houston [14th Dist.] 1995, no writ)); *see also* TEX. R. CIV. P. 65. Brady's amended petition did not bar or render defective Kane's special appearance in the county court.

## B. Timely Pursuit of Special Appearance

Brady next argues that Kane did not timely pursue her special appearance. The case was assigned to county court at law number two on February 19, 2018. At that time, the judicial seat was empty, and a visiting judge was handling matters for

the court. Brady filed her amended petition on March 7, 2018, and Kane filed her supplemental special appearance on April 18, 2018. Brady complains that, although Kane originally set the special appearance for hearing for April 20, 2018, she moved the hearing to May 18, 2018, which was three weeks before the initial trial setting of June 7, 2018. At the May 18 hearing, Kane's counsel explained that he moved the hearing date after being told by the court clerk that a judge would be appointed to the court by the time of trial. Counsel thought it would be best to have the same judge hear the special appearance and, if needed, try the case.

Rule 120a contains due-order-of-pleading and due-order-of-hearing requirements but imposes no temporal deadline by which a party contesting jurisdiction must have a hearing on a motion for special appearance. TEX. R. CIV. P. 120a. A specially-appearing defendant must make a timely request for a hearing, bring the special appearance to the trial court's attention, and secure a ruling on the preliminary question of personal jurisdiction before the trial on the merits begins or before the court adjudicates the merits of the claims against the defendant. *Milacron, Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875–76 (Tex. App.—Texarkana 2008, no pet.). Otherwise, the defendant waives its special appearance by not timely pressing for a hearing. *Id.* at 876 (party waived special appearance by waiting until after opening statements to file its special appearance and failing to request a hearing and secure a ruling on the special appearance before proceeding to trial on the merits); *Kehoe v. Pollack*, 526 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.]

2017, no pet.) (special appearance waived where trial court ruled on special appearance twenty months after discharge order). Here, Kane noticed her special appearance for hearing, and the trial court held the hearing and ruled on the special appearance before any other substantive matter. Moreover, Brady points this Court to no evidence that Kane's decision to delay the hearing a month at the beginning stages of the case was dilatory or prejudicial. Rule 120a's due-order-of-hearing requirement was, therefore, satisfied, and we conclude Kane timely pursued and obtained a ruling on her special appearance.

## C.    Sworn Motion

Finally, Brady contends the special appearance was fatally defective because it was not sworn. Rule 120a requires special appearances to be made by "sworn motion." TEX. R. CIV. P. 120a(1). Here, Kane's supplemental special appearance is not a verified pleading in that Kane did not sign a verification attesting to the truth of the statements in the supplemental special appearance itself. *See Andrews v. Stanton*, 198 S.W.3d 4, 8 (Tex. App.—El Paso 2006, no pet.) (a verification is "[a] formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document.") (citing Black's Law Dictionary 1556 (7th Ed.1999)). This does not mean, however, that Kane's supplemental special appearance was not a sworn motion as required by Rule 120a. Kane supported her supplemental special appearance with the verified special appearance filed in the justice court as well as two additional affidavits and other

evidence, all of which she incorporated by reference in her supplemental special appearance. On appeal, Brady does not identify any jurisdictional fact stated in Kane's supplemental special appearance that is not repeated and sworn to by Kane in either her affidavits or her verified special appearance. We conclude that the affidavits and original verified special appearance sufficiently verified the supplemental special appearance. *See Andrews*, 198 S.W.3d at 8 (affidavits attached to motion to reinstate and incorporated by reference verified motion as required by Rule 165a); *see also Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 12 (Tex. App.—Dallas 2008, no pet.) ("the requirements of rule 120a are met by an affidavit that is clear, definite, and unequivocal, and unless there is something in the affidavit itself to indicate to the contrary, we accept it for what it appears on its face to be"); *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (special appearance made by sworn motion where movant attached affidavit that sufficiently verified special appearance). For these reasons, we find against Brady on her first issue.

## WAIVER

In her second issue, Brady contends Kane waived the special appearance by seeking affirmative relief unrelated to the special appearance, propounding requests for merits discovery and responding to merits discovery without reservation of the special appearance, and filing a motion for sanctions in a related case between the

–12–

same parties regarding the same loan. We conclude Kane did not waive her special appearance.

A defendant who does not strictly comply with the procedural requirements of Rule 120a, including the due-order-of-pleading and due-order-of-hearing requirements, waives its jurisdictional challenge and enters a general appearance. TEX. R. CIV. P. 120a(1). A defendant enters a general appearance "when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (citing *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). "The test for a general appearance is whether a party requests affirmative relief inconsistent with an assertion that the trial court lacks personal jurisdiction." *Klingenschmitt v. Weinstein*, 342 S.W.3d 131, 134 (Tex. App.—Dallas 2011, no pet.) (citing *Dawson–Austin*, 968 S.W.2d at 323). For example, a defendant waives his special appearance when he files a motion that adjudicates the merits of the case and has the motion heard before the court hears his special appearance. *See, e.g., Klingenschmitt*, 342 S.W.3d at 134–35 (motion to dismiss for failure to state a cause of action); *see also Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 803 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (motion to dismiss and motion for summary judgment). Similarly, a party makes a general appearance when, after the court sustains the party's special appearance, that party requests attorney's fees under the Uniform

Declaratory Judgment Act, obtains a hearing on the motion, and appears and argues the motion to the trial court. *Composite Cooling Sols., L.P. v. Larrabee Air Conditioning, Inc.*, No. 02-17-00006-CV, 2017 WL 2979918, at *5 (Tex. App.—Fort Worth July 13, 2017, no pet.) (mem. op.).

A specially appearing party will not, however, waive the jurisdictional challenge by seeking affirmative relief consistent with the special appearance. *Dawson–Austin*, 968 S.W.2d at 323; *Nationwide Distribution Servs., Inc. v. Jones*, 496 S.W.3d 221, 224–25 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Examples of actions a party can take without waiving a special appearance are (1) filing a motion for continuance relating to discovery on a motion to quash service; (2) serving nonjurisdictional discovery requests; (3) filing a motion to compel nonjurisdictional discovery but not scheduling a hearing or obtaining a ruling on the motion; (4) litigating a jurisdictional discovery dispute; (5) litigating other disputes that are factually related to the special appearance; or (6) litigating opposition to merits-based discovery sought by another party. *See Dawson-Austin*, 968 S.W.2d at 323; *see also Nationwide Distribution Servs.*, 496 S.W.3d at 227–28 (internal citations omitted).

## A.     Filing a Motion to Vacate Judgment and Protective Order

Brady first contends that Kane waived her special appearance by filing and obtaining a ruling on a Motion to Vacate Judgment and Protective Order in the trial court before filing her Supplemental Special Appearance. After perfecting her

appeal in the county court, Kane filed the motion in response to Brady's efforts to collect the justice court judgment in Virginia. Kane asserted that, although the justice court judgment was vacated and annulled under Texas law upon perfection of her appeal to the county court at law, Brady continued to seek to collect the judgment in Virginia and misrepresented to the Virginia court that there was not an appeal pending. In the motion, Kane asked the county court to issue an "expressly worded order" vacating the judgment and a protective order requiring Brady to cease collection efforts on the justice court judgment. At the hearing, Kane's counsel asked the court to issue an order stating that the justice court order has been vacated, an appeal has been perfected, and a new trial de novo will occur in the case. The trial court signed an order stating that Kane's appeal of the justice court judgment has been perfected and is currently pending.

Brady maintains that the motion sought affirmative relief inconsistent with the special appearance. We disagree. Kane did not seek a decision on the merits of the appeal. Rather, she sought an order reciting the law and the current status of the case pursuant to the law governing appeals from justice court judgments. Kane did not seek affirmative relief from the trial court through the motion and, thus, did not make a general appearance. Moreover, the relief sought was not inconsistent with Kane's assertion that the trial court lacked jurisdiction over her. On the contrary, Kane sought the order in order to preserve her right to appeal the denial of her special appearance without threat of Brady attempting to collect the void justice court

–15–

judgment in Virginia and to re-urge her contention that the Texas courts did not have jurisdiction to render any judgment against her. We conclude Kane did not make a general appearance by filing and obtaining a ruling on her Motion to Vacate Judgment and Protective Order.

## B. Engaging in Discovery

Next, Brady argues that Kane waived her special appearance by serving a request for production of documents not made subject to the special appearance, asking for dates to depose Brady and Brady's husband, and responding to Brady's requests for disclosure and requests for production of documents. Engaging in discovery is not enough in and of itself to waive a special appearance. *See, e.g., Silbaugh v. Ramirez*, 126 S.W.3d 88 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (recognizing "the discovery process includes timely objections to discovery and does not require a defendant to choose between waiving discovery objections and waiving her special appearance," and holding that the defendant's actions in defending against merits-based discovery were "part of the discovery process and did not waive her special appearance."); *Hotel Partners v. Craig*, 993 S.W.2d 116, 123 (Tex. App.—Dallas 1994, writ denied) (holding motion to protect privileged documents from discovery did not waive special appearance); *Int'l Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 809 (Tex. App.—Fort Worth 1994, writ denied) (holding motion for protective order to limit discovery to jurisdictional matters did not waive special appearance); *Moore v. Elektro Mobil Technik GMBH*, 874 S.W.2d 324, 328 (Tex.

–16–

App.—El Paso 1994, writ denied) (objections to discovery did not waive special appearance). Further, a review of the discovery Kane propounded and the discovery she responded to reveals that much of the discovery is jurisdictional in nature, although some of the discovery also goes to the merits of the case. As such, the discovery was not inconsistent with the special appearance. Under this record, Kane's actions of engaging in discovery did not waive her special appearance.

Brady also argues that Kane waived her special appearance by stating in subsection (d) of her response to Brady's request for disclosures that she "is seeking attorney's fees" in the litigation. We disagree. Responding to a request for disclosure does not constitute a request for affirmative relief from the trial court. It is merely a response to a request for information required by the rules of procedure. TEX. R. CIV. P. 194.3 (setting deadline for responding party to serve a written response on the requesting party); TEX. R. CIV. P. 193.6 (exclusion of evidence or testimony of witnesses not timely disclosed). Although a party sets out its legal theories and amount and method of calculating damages in response to requests for disclosure, the response itself does not request any affirmative action by the trial court. Indeed, when a party responds to a request for disclosure, she does not even file her discovery responses with the trial court. Here, Kane disclosed in her responses that the trial court lacks jurisdiction over her and also responded to the other requests. This included subsection (d) in which she stated that she is seeking attorney's fees. Kane did not file her responses with the court and did not thereafter ask the trial

court for an award of fees. Her response did not constitute a general appearance and did not waive her special appearance. *See, e.g., Trejo*, 142 S.W.3d at 306 ("while filing a Rule 11 Agreement with the trial court is a requirement for enforcement, it is not in and of itself a request for enforcement or any other affirmative action by the trial court").

As to Brady's contention that Kane was required to make her discovery subject to the special appearance, that is incorrect. It is not necessary that pleas, pleadings, or motions filed subsequent to the special appearance expressly state they are made subject to the special appearance. *Exchequer Fin. Group, Inc. v. Stratum Dev., Inc.*, 239 S.W.3d 899, 906 (Tex. App.—Dallas 2007, no pet.); *see also Dawson–Austin*, 968 S.W.2d at 322–23.

Brady's complaint that Kane sought to depose her and her husband is also unavailing because, like the written discovery, the depositions were, at a minimum, partially related to the special appearance and engaging in discovery is not prohibited under Rule 120a. *See Lochmere Dev. Group, Inc. v. Eiger, Inc.*, No. 05-00-01332-CV, 2001 WL 392897, at *3 (Tex. App.—Dallas Apr. 19, 2001, pet. dism'd w.o.j.) (filing an application for subpoena duces tecum did not waive special appearance). Moreover, Kane merely requested deposition dates. There is no evidence in the record that Kane served a subpoena duces tecum or deposed the Brady parties. Indeed, to the extent Kane intended to depose the Brady parties on nonjurisdictional issues, such purported intent would not necessarily waive her special appearance.

–18–

*See Minucci v. Sogevalor*, 14 S.W.3d 790, 800 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (filing a notice of oral hearing on a motion to dissolve writ of garnishment and asking a deposition witness questions relating to the writ of garnishment did not waive special appearance); *Case v. Grammar*, 31 S.W.3d 304, 311 (Tex. App.—San Antonio 2000, no pet.), *abrogated on other grounds by BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 n. 1 (Tex. 2002) (seeking discovery that exceeds the scope of the jurisdiction issue did not waive special appearance); *Dawson-Austin*, 968 S.W.2d at 323 (motion for continuance relating to discovery on motion to quash service did not waive special appearance).

## C.    Filing a Motion for Sanctions

Finally, we reject Brady's argument that Kane waived her special appearance by seeking sanctions against Brady in Kane's appeal of the justice court's order sustaining Brady's contest of Kane's Statement of Inability to Pay Court Costs. After Kane filed her rule 506.1(d)(3) appeal in County Court at Law Number 1, Brady filed an amended petition in which she included new jurisdictional allegations against Kane and an amended response to Kane's Statement. Kane filed a Rule 13 Motion for Sanctions against Brady based on those filings. In the sanctions motion, Kane argued that Brady's filings were groundless because they were based on factual allegations Kane had refuted through affidavit testimony and documentary evidence in the justice court. Kane maintained that Brady's counsel either filed a pleading he knew to be false or failed to make a reasonable inquiry into the veracity of the

pleadings as required by Rule 13 in order to delay dismissal of the case for want of jurisdiction over Kane. Kane further alleged that Brady's amended pleadings made minor, semantic changes to her prior pleadings that masked but did not cure the falsity of the facts alleged "in a desperate attempt to establish jurisdiction" and with the intent to delay adjudication of the jurisdictional challenge. Brady contends Kane waived the special appearance by seeking sanctions against her. We disagree.

The motion for sanctions did not request affirmative relief inconsistent with Kane's assertion that the trial court lacked jurisdiction over her. Rather, the motion sought sanctions against Brady because of actions Kane believed Brady took to delay resolution of Kane's jurisdictional challenge in violation of Rule 13. Those alleged acts included pleading false jurisdictional facts to avoid dismissal and prolong the litigation. Kane argued that Brady's conduct caused Kane to incur unnecessary costs and expenses to defend against Brady's knowingly false pleadings in a court that does not have jurisdiction over her. The motion focused on Brady's jurisdictional pleadings and stated that the Dallas Courts do not have jurisdiction over Kane. Under these circumstances, the filing of the motion and obtaining a ruling on it were consistent with the special appearance and did not waive it. *See First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 777–78 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (motion to strike amended pleadings did not waive First Oil's special appearance because allowing pleadings to stand and add additional party would have permitted plaintiffs to continue to argue that the court should delay special

appearance hearing to First Oil's detriment); *see also Silbaugh*, 126 S.W.3d at 93–94 (motion to strike intervention not inconsistent with assertion that court lacked jurisdiction where the motion requested the intervention be stricken because of a lack of jurisdiction over the defendant). And, unlike one of the cases cited by Brady, the motion for sanctions in this case was entirely related to the appeal of the denial of Kane's Statement of Inability to Pay and her efforts to appeal the denial of her special appearance. *C.f. Shapolsky v. Brewton*, 56 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (motion for sanctions in which defendant argued issues unrelated to special appearance waived jurisdictional challenge). Under this record, we find no waiver by Kane. We overrule Brady's second issue.

## EVIDENTIARY HEARING

In her third and fourth issues, Brady contends the trial court denied her the right to an evidentiary hearing by refusing to let Brady testify at the hearing on the special appearance, failing to require Kane to be deposed, refusing to compel Kane to respond to Brady's jurisdictional discovery, and ruling on the special appearance before Brady was able to obtain authenticated copies of two exhibits that the court took judicial notice of at the hearing. Though a trial court may hold an evidentiary hearing on a special appearance, the court also may consider stipulations, affidavits, documents, and the results of discovery processes that the parties file with the court. *See* TEX. R. CIV. P. 120a(3) (stating that the trial court shall determine a special appearance "on the basis of the pleadings, any stipulations made by and between the

–21–

parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony"). "Thus, in a special-appearance context, the absence of an evidentiary hearing does not necessarily mean that the trial court ruled without considering any evidence or ruled as a matter of law based on stipulations." *Cont'l Alloys & Servs. (Delaware) LLC v. YangZhou Chengde Steel Pipe Co., Ltd.*, No. 14-18-00127-CV, – S.W.3d –, 2020 WL 262724, at *3 (Tex. App.—Houston [14th Dist.] Jan. 16, 2020, no pet. h.).

Brady's complaints are unfounded because the trial court held an evidentiary hearing on the special appearance at which Brady offered five exhibits into evidence. The trial court admitted three of those exhibits and took judicial notice of the remaining two exhibits. The two exhibits the court did not admit into evidence were a copy of the $6,000 wire transfer from Brady's bank account (Plaintiff's Exhibit 4) and unauthenticated copies of e-mails purportedly sent between Brady and Kane in April 2018 and undated text messages purportedly from Brady to Kane regarding the two transactions at issue here (Plaintiff's Exhibit 5). Brady's contention that she was denied an evidentiary hearing is false.

Further, Brady has not shown the trial court abused its discretion by refusing to admit Exhibits 4 and 5. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (trial court's decision to admit evidence is reviewed for an abuse of discretion). Kane did not dispute that she received $6,000 from Brady through a wire transfer from Brady's Texas bank account. Plaintiff's Exhibit 4, the copy of the bank

transfer, was irrelevant to the trial court's decision-making. As for the e-mails and text messages, Plaintiff's Exhibit 5 was unauthenticated, included counsel's handwritten notes on the documents, the emails were from counsel's e-mail account and did not include the parties' names or e-mail addresses, and the text messages were undated. The trial court did not abuse its discretion by refusing to admit these exhibits into evidence. As for Brady's complaint that the trial court should not have ruled on the special appearance until Brady obtained authenticated copies of Plaintiff's Exhibit 5 from AT&T, she waived that complaint by failing to move for a continuance of the hearing or seeking a stay of the trial court's ruling. *See* TEX. R. APP. P. 33.1(a).

Brady also complains that the trial court refused to let Brady testify at the special appearance hearing, failed to require Kane to be deposed, and refused to compel Kane to respond to Brady's jurisdictional discovery. Brady waived those complaints by failing to request the relief from the trial court. *See* TEX. R. APP. P. 33.1(a). Brady's counsel did not call Brady to the stand to testify at the hearing, nor did the trial court refuse either party the right to call witnesses at the hearing. Brady's counsel admitted at the hearing that he had not requested to depose Kane and stated that he thought they had "enough to defeat the special appearance as it is." Similarly, Brady did not file a motion to compel against Kane to obtain responses to jurisdictional discovery. Moreover, Brady did not seek a continuance of the special appearance hearing to obtain Kane's deposition or to seek an order compelling the

discovery. Brady, therefore, waived these complaints. We overrule Brady's third and fourth issues.

## SPECIAL APPEARANCE

Brady's remaining issues address the merits of the trial court's jurisdictional analysis. Brady maintains the special appearance should have been denied, the order granting the special appearance should be reversed, and Brady should be awarded her attorney's fees.

### A.     Standard of Review

A special appearance is used to challenge the trial court's jurisdiction over a person or property based on a claim that neither is amenable to process in this state. TEX. R. CIV. P. 120a. Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *see also Golden Peanut Co., LLC v. Give and Go Prepared Foods Corp.*, No. 05-18-00626-CV, 2019 WL 2098473, at *2 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.). If, as in this case, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all findings of fact necessary to support its ruling that are supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When jurisdictional facts are undisputed, whether those facts establish jurisdiction is a question of law. *Old Republic*, 549 S.W.3d at 558.

**B.    Applicable Law**

Texas courts may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute permits exercising jurisdiction and (2) asserting jurisdiction satisfies constitutional due process guarantees. *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016). Our long-arm statute authorizes the exercise of jurisdiction over non-resident defendants who do business in Texas. *See generally* TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045; *BMC Software*, 83 S.W.3d at 795. The Texas long arm statute lists actions that constitute "doing business" in Texas. TEX. CIV. PRAC. & REM. CODE § 17.042. For example, a nonresident does business in Texas if the nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state. . . ." TEX. CIV. PRAC. & REM. CODE § 17.042. The Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

**1.    Due Process Requirements**

Personal jurisdiction over a nonresident defendant satisfies constitutional due process guarantees when (1) the nonresident defendant has established minimum contacts with the forum state and (2) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *M & F Worldwide Corp. v.*

*Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

Minimum contacts are established when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly*, 301 S.W.3d at 657–58. The purposeful-availment inquiry includes three parts: (1) only the defendant's contacts are relevant; (2) the contact must be purposeful, not random, fortuitous, or attenuated; and (3) the defendant must seek some advantage, benefit, or profit by availing itself of the forum. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 154 (Tex. 2013) (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Once minimum contacts have been established, the exercise of jurisdiction will typically comport with traditional notions of fair play and substantial justice. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010) (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, PLC*, 815 S.W.2d 223, 231 (Tex. 1991)). We review this prong of the due process analysis in light of the following factors:

(1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies.

*Spir Star AG*, 310 S.W.3d at 878 (internal quotations and citations omitted).

### 2. Specific Jurisdiction v. General Jurisdiction

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction. *Moki Mac*, 221 S.W.3d at 575. Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to an activity conducted within the forum state. *Id.* at 576. A claim arises from or relates to the forum contacts if there is a "substantial connection between [the] contacts and the operative facts of the litigation." *Id.* at 585. The specific jurisdiction analysis focuses on the relationship between the defendant, the forum, and the litigation. *Id.* at 575–76. Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis unless all claims arise from the same forum contacts. *Moncrief Oil*, 414 S.W.3d at 150–51.

A court has general jurisdiction, also called all-purpose jurisdiction, over a nonresident defendant whose "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016); *Golden Peanut*, 2019 WL 2098473, at *3. The test for general jurisdiction presents "a more demanding minimum contacts analysis than

for specific jurisdiction." *TV Azteca*, 490 S.W.3d at 37. When a court has general jurisdiction over a nonresident, it may exercise jurisdiction even if the cause of action did not arise from activities performed in the forum state. *Golden Peanut*, 2019 WL 2098473, at 3. Brady does not contend the trial court has general jurisdiction over Kane.

### 3. Shifting Burdens

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the long-arm statute. *BMC Software*, 83 S.W.3d at 793. After the plaintiff meets that initial burden, the non-movant then has the burden to negate all forms of personal jurisdiction claimed by the plaintiff. *Id.* at 793; *Am. Type Culture Collection*, 83 S.W.3d at 807. If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, however, the defendant need only prove that she does not live in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d at 658–59 (Tex. 2010).

### C. Analysis

In her fifth issue, Brady argues that Texas has specific jurisdiction over Kane because her lawsuit, which she describes as "a collection suit on two loans," arises from and relates to Kane's contacts with Texas. Brady does not contend the court has general jurisdiction over Kane.

The first step in our jurisdictional analysis is to determine whether Brady pleaded sufficient jurisdictional facts to meet her initial burden of pleading

allegations that suffice to permit a court's exercise of personal jurisdiction over Kane. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016); *see also Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.). As we explained in *Dhalla*, "[t]his minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas." *Dhalla*, 282 S.W.3d at 695; TEX. CIV. PRAC. & REM. CODE § 17.042(1) (a nonresident does business in Texas if the nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state. . . ."). In order to determine whether Brady met her initial burden, we look to the jurisdictional facts pleaded in her petition and in her response to Kane's special appearance. TEX. R. CIV. P. 120a(3); *Colmen LLC v. Santander Consumer USA, Inc.*, No. 05-17-00101-CV, 2017 WL 5022700, at *4 (Tex. App.—Dallas Nov. 3, 2017, no pet.) (mem. op.).

In her amended petition in the county court, Brady stated that she is a Texas resident, and Kane primarily resides in Virginia with homes in Hilton Head and Colorado but had lived and worked in Texas in the past and attended high school in Dallas. Brady alleged that Kane "borrowed money situated in Dallas County, Texas from Kathy Brady on at least three separate occasions by contacting Kathy while Kathy was in Dallas County, Texas." Brady also alleged that Kane had not repaid two of the purported loans. The first was purportedly made on July 8, 2016 when Kane borrowed $6,035.00 from Brady, the funds were sent through a wire transfer

from a Dallas County bank account, the loan repayments were to be made in Dallas County, Texas, and the loan was to be repaid in six months. Brady also alleged that Kane borrowed $483.33 from Brady in December 2016 in Grapevine, Texas when Kane requested that Brady pay for the hotel room Kane was staying in for an event sponsored by a third party. We conclude these alleged jurisdictional facts were sufficient for Brady to plead that Kane was "doing business" in Texas and, as such, Brady satisfied her initial pleading requirement under the Texas long-arm statute.

Because Brady satisfied this pleading requirement, the burden shifted to Kane to negate all bases of jurisdiction alleged by Brady. *Searcy*, 496 S.W.3d at 66; *Kelly*, 301 S.W.3d at 658; *Phillips Dev. & Realty, LLC v. LJA Eng'g, Inc.*, 499 S.W.3d 78, 85–86 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court has personal jurisdiction over the nonresident defendant." *Dhalla*, 282 S.W.3d at 695. The defendant can negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id.* "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id.* (footnotes omitted). A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient

to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Venator Materials PLC v. Macomb Cty. Empls.' Ret. Sys.*, No. 05-19-01177-CV, 2020 WL 289296, at *4 (Tex. App.—Dallas Jan. 21, 2020, no pet.) (quoting *Kelly*, 301 S.W.3d at 659).

In her supplemental special appearance, Kane presented evidence and arguments to negate jurisdiction on both a factual and legal basis. Factually, Kane presented affidavit testimony and documentary evidence denying and controverting Brady's factual allegations. Kane's affidavits show that Kane currently lives in Virginia, has lived there since 1995, and has been in the state of Texas less than five times since moving to Virginia. Kane graduated from Southampton High School in New York in 1983. The only time she has spent more than five consecutive days in Texas was in 1983 when she spent a week in the summer after graduating high school with her dad in Texas before she left for the Marine Corps. She has never spent more than a week at a time in Texas other than that "weeks long visit" in 1983. During that visit in 1983, she helped her father with working at a café. Other than that, she has never been employed in Texas or conducted business in Texas. Kane does not currently and has not ever owned property or assets in Texas, and has never had a Texas driver's license or Texas state identification card. She also testified via affidavit that she did not meet Brady until Christmas 1992, so any testimony offered

–31–

by Brady about Kane before 1992 would be based solely on hearsay and not on Brady's personal knowledge.

Kane also disputed Brady's allegations regarding the loans. In her affidavits, Kane testified that neither the $6,000 nor the $483.33 was a loan from Brady. Kane stated that she did not solicit the $6,000 from Brady and did not approach Brady and ask Brady to loan her $6,000 or any amount of money in the last five years. According to Kane, Brady reached out to her while Kane was in Virginia and offered to give Kane $6,000 to help Kane's family because "that's what mothers do for their children." Before transferring Kane the money, Kane stated there was no discussion about paying Brady back or that Brady considered the money a loan. According to Kane, months after Brady gave Kane the money, Brady became angry with Kane over personal matters and, at that point, began calling the $6,000 a loan, demanded Kane sign an IOU, left voicemails threatening to sue Kane in Dallas to get a judgment and garnish her wages when Kane did not appear in court.

Kane also denies the validity of Brady's allegations about loaning Kane money to cover the costs of the hotel room. According to Kane's affidavit testimony, Kane was in Dallas for a business event and was staying at the Gaylord Texan. Kane's dad met Kane for dinner at the hotel and offered to pay for dinner and for Kane's hotel room. Kane initially declined the offer, but her dad insisted. Kane states in her affidavit that "At no point was this ever a 'loan' or a 'credit' or anything other than a father offering to do a nice thing for his daughter." She also states that

there was never a discussion with her dad that she could not afford to pay for the room or dinner.  Also, Brady was at no point a party to the discussion or the event.

We conclude Kane's affidavit testimony negated Brady's jurisdictional allegations on a factual basis by denying those allegations. *See Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 604 (Tex. App.—Dallas 2010, no pet.) (defendant's affidavit negated plaintiff's claimed bases for subjecting defendant to jurisdiction in Texas by denying plaintiff's allegations of alleged misrepresentations to and dealings with plaintiff); *Brown v. Pennington,* No. 05-14-01349-CV, 2015 WL 3958618, at *10 (Tex. App.—Dallas June 30, 2015, no pet.) (mem. op.) (defendant successfully negated the alleged jurisdictional facts pleaded by plaintiff by denying those allegations in his affidavit). The burden then shifted back to Brady to respond with her own evidence affirming her allegations. *See id.*

In response to the supplemental special appearance, Brady filed a verified response in opposition to the special appearance. Brady verified that the factual statements in the response and her amended petition were within her personal knowledge and true and correct. She did not, however, present any additional facts beyond those included in her amended petition and did not present evidence to dispute facts presented by Kane in her affidavits. Brady objected to the use of affidavits to support the special appearance but did not obtain a ruling on that objection.  Brady also asserted her right to cross-examine Kane, but did not seek to depose Kane in Virginia or file a motion to compel Kane's deposition. Under this

record, Brady failed to meet her burden to produce evidence establishing jurisdiction over Kane in Texas. *See id.* at 605. Moreover, were we to conclude Brady's verified response to the special appearance raised a fact issue, we would still resolve the dispute by upholding the trial court's determination because the parties presented conflicting evidence. *See TV Azteca*, 490 S.W.3d at 36 n. 4 ("When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence.") (quoting *Moncrief Oil*, 414 S.W.3d at 150).

Further, even taking Brady's allegations as true, Kane's contacts with Texas do not give rise to specific jurisdiction. *See Kelly*, 301 S.W.3d at 659 (defendant can negate jurisdiction on a legal basis by showing that even if plaintiff's alleged facts are true, defendant's contacts with Texas do not amount to purposeful availment). Brady does not argue that general jurisdiction is available over Kane. We, therefore, confine our inquiry to specific jurisdiction, which is based on "whether the defendant's activities in the forum state themselves 'give rise to the liabilities sued on.'" *Searcy*, 496 S.W.3d at 67 (quoting *Int'l Shoe*, 326 U.S. at 317). "[T]he defendant's relationship, not the plaintiff's relationship, with the forum state is the proper focus of the specific jurisdiction analysis; that is, courts must consider the relationship between the defendant, the forum state, and the litigation." *AEG Power Sols. GmbH v. Creation Techs. Texas, LLC*, No. 05-19-00195-CV, 2019 WL

5884427, at *4 (Tex. App.—Dallas Nov. 12, 2019, no pet.) (quoting *Searcy*, 496 S.W.3d at 67).

Here, there is no evidence that Kane sought money from Brady because Brady lived in Texas or because Kane sought any advantages under Texas law for contracting with a Texas resident. In fact, regarding the $483.33 hotel payment, it is undisputed that Kane was in Dallas on business, not to obtain a loan from Brady to pay for a hotel room at the Gaylord Texan in Grapevine. Even taking Brady's rendition of facts as true, Brady's status as a Texas resident is merely a fortuitous fact that that does not support a finding of purposeful availment here. *See Kelly*, 301 S.W.3d at 660 ("[J]urisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business.") (emphasis in original); *see also Searcy*, 496 S.W.3d at 74–75 (no purposeful availment where "the Nabors employees involved could, quite literally, have been based anywhere in the world, and Parex Canada would presumably have interacted with it in the same way as they did with its employees here … Rather, the mere coincidence of Nabor's presence here—completely out of Parex Canada's control—means that the trial court lacked specific jurisdiction."). Under this record, there was not a substantial connection between Kane's purported contacts and the operative facts of the case—those that will be the focus of trial to prove Kane's liability. *See Moncrief Oil*, 414 S.W.3d at 157; *see also Moki Mac*, 221 S.W.3d at 587–88; *Klug v. Wickert*, No. 05-14-00080-

CV, 2015 WL 4338424, at *4 (Tex. App.—Dallas July 16, 2015, no pet.) (mem. op.).

Moreover, entering into a single contract with a Texas resident, standing alone, does not establish minimum contacts sufficient to support jurisdiction. *Internet Advert. Grp. v. Accudata, Inc.*, 301 S.W.3d 383, 389 (Tex. App.—Dallas 2009, no pet.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)); *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417 (Tex. App.—Dallas 2008, no pet.) ("merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction"); *Pillai v. Pillai*, No. 07-14-00379-CV, 2015 WL 1221394, at *3 (Tex. App.—Amarillo Mar. 16, 2015, no pet.) (mem. op.) (allegations that party requested a loan from a party in Texas that was to be repaid in Texas insufficient to confer Texas jurisdiction on a non-resident). Instead, courts must apply a "highly realistic" approach that recognizes that a "contract ... [is] ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Televentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 910 (Tex. App.—Austin 2000, pet denied) (quoting *Burger King*, 471 U.S. at 478). To evaluate purposeful availment, we look to such factors as prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts with the forum. *Accudata,* 301 S.W.3d at 389.

Here, Brady presented no evidence of prior negotiations, contemplated future consequences, the parties' actual course of dealing, a signed contract, or actual terms of the contract related to either of the transactions at issue here. Indeed, the parties dispute who initiated these transactions and whether these transactions were even loans that Kane agreed to repay. Conflicting evidence is resolved in favor of the judgment. *See Moncrief Oil*, 414 S.W.3d at 150. Applying these standards, we conclude the record does not establish minimum contacts sufficient to support jurisdiction over Kane. Having found that Kane established a lack of purposeful availment, we need not address the question of whether exercising jurisdiction over Kane would offend traditional notions of fair play and substantial justice.

Because Kane's contacts with Texas are insufficient to establish specific jurisdiction, we overrule Brady's fifth issue. We affirm the trial court's order granting the special appearance. In her final issue, Brady asks this Court to award her attorney's fees as a sanction against Kane for filing a groundless special appearance. We have concluded the special appearance was properly granted and, thus, not groundless. We, therefore, find against Brady on her final issue.

## CONCLUSION

In sum, the record contains insufficient evidence establishing specific jurisdiction over Kane. Consequently, the trial court did not err in granting Kane's

special appearance. We affirm the trial court's judgment.


/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE


181105F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

KATHY BRADY, Appellant

No. 05-18-01105-CV      V.

ANITA KANE, Appellee

On Appeal from the County Court at Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-18-00890-B.
Opinion delivered by Justice Partida-Kipness. Justices Bridges and Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ANITA KANE recover her costs of this appeal from appellant KATHY BRADY.

Judgment entered this 28th day of April, 2020.